UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOEL RIVAS,

       Plaintiff,

v.                       CASE No. 8:20-cv-282-JSM-TGW

ANDREW SAUL,
Commissioner of Social Security,

       Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]  Because the decision of the Commissioner of Social Security fails to evaluate the plaintiff's traumatic brain injury and alleged residual headaches, I recommend that the decision be reversed and the matter remanded to the Commissioner for further proceedings.

_____

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was forty-nine years old at the time his insured status expired and who has a high school education, has past relevant work as a trainer (Tr. 17, 33). He was also enlisted in the Army for several years. The plaintiff filed a claim for Social Security disability benefits, alleging that he became disabled due to osteoarthritis of both knees and ankles, carpal tunnel syndrome, sleep apnea/narcolepsy, chronic bronchitis, dry eye syndrome, severe gastroesophageal reflux disease, hypertension and anxiety (Tr. 71). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that, as of the date the plaintiff was last insured on September 30, 2019, he had severe impairments of "alcohol abuse, obstructive sleep apnea, carpal tunnel syndrome, status post repairs, osteoarthritis of ankles, [and] cervical and lumbar degeneration without stenosis" (Tr. 12).

The law judge also considered several other impairments, which he found were either non-severe or not medically determinable (Tr. 12–13). In particular, the law judge determined that the plaintiff's "medically determinable mental impairments of anxiety and depression

which the claimant described as post-traumatic stress disorder[2] … did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe" (Tr. 13).[3]

The law judge concluded that, with these impairments, the plaintiff had, as of the last date he was insured, "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb ropes and scaffolds; frequently reach and handle bilaterally; and avoid concentrated use of hazardous industrial machinery" (Tr. 14). He further found that, through the date last insured, the plaintiff was unable to perform past relevant work (Tr. 17).[4] However, the law judge determined, based on the testimony of a vocational expert, that through the date last insured, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as customer

---

[2]The plaintiff was diagnosed with PTSD (see Tr. 1584).

[3]Specifically, the law judge found that the plaintiff had only mild limitations in understanding, remembering or applying information; interacting with others; the ability to concentrate, persist or maintain pace; and the ability to adapt or manage himself (Tr. 13–14). See Stone v. Commissioner of Social Security, 586 Fed. Appx. 505, 512 (11th Cir. 2014) (When a claimant is only mildly impaired in the pertinent areas of mental functioning, it is appropriate to find that the medically determinable mental impairments are non-severe.).

[4]The vocational expert actually testified that the plaintiff could do prior work as a trainer as it is performed in the national economy, but not as actually performed (Tr. 66).

service clerk, photocopy machine operator and office helper (Tr. 17–18). Accordingly, the law judge decided that the plaintiff was not disabled through September 30, 2019, the date he was last insured (Tr. 18).   The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. 423(d)(1)(A).   A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. 423(d)(3).   In this case, the plaintiff must also show that he became disabled before his insured status expired on September 30, 2019.   42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

-4-

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.   42 U.S.C. 405(g).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."   Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).   Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.   Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.   Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff's arguments focus on the law judge's failure to consider his post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI) (Doc. 21, pp. 2, 8).   He also contends, more generally, that the law judge failed to develop a full and fair record, and that the law judge's assessment of his physical residual functional capacity was erroneous (id., pp. 7, 12).   The plaintiff's contention that the law judge erred in failing to evaluate his TBI and residual headaches has merit and warrants remand of this case.

"Traumatic brain injury (TBI) is damage to the brain resulting from skull fracture, collision with an external force leading to a closed head

injury, or penetration by an object that enters the skull and makes contact with brain tissue." Revised Medical Criteria for Evaluating Neurological Disorders, 81 FR 43048-01, 2016 WL 3551949, at 43056.   "Those who survive a TBI can face effects that last a few days, or the rest of their lives." www.cdc.gov/traumaticbraininjury/get_the_facts.   Effects of TBI may include impairments related to emotional and/or physical functioning.   Id.

As the plaintiff contends, the law judge failed to mention in the decision the plaintiff's TBI or his alleged limitations resulting from that impairment (Doc. 21, pp. 6, 10).   This omission violates the basic principle that the law judge must state specifically the weight accorded each item of impairment evidence and the reasons for his decision on such evidence. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986); Vega v. Commissioner of Social Security, 265 F.3d 1214, 1219 (11th Cir. 2001) (remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis).   Moreover, the law judge must consider the combined effects of impairments and make specific and well-articulated findings regarding those effects.   Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

The plaintiff served in the military for several years so that most of the pertinent medical records are from the Veterans Administration. On September 4, 2018, the plaintiff underwent a "Comprehensive TBI Evaluation" with Dr. Tanya Harris (Tr. 1486–92). The plaintiff reported that he (Tr. 1489):

> [experienced an] IED blast exposure from 30 yards while serving in Iraq in 2009.[ 5 ]   Patient describes brief confusion without loss of consciousness.   He also suffered blunt trauma to the head via pallet one week later without loss of consciousness.   Patient describes worsening headaches over the last 3 years, mostly left temporal.   Headaches are throbbing and last 1-2 hours.   They can be sporadic and can be daily or can skip several weeks of occurrence ....

Dr. Harris assessed the plaintiff with, among other diagnoses, m[ild]TBI—status post blast exposure and blunt trauma, and headaches—etiology uncertain (Tr. 1492). In December 2018, Dr. Jessica Cupido saw the plaintiff for a "TBI/polytrauma Follow-up" (Tr. 1460), at which time she assessed the plaintiff with, among other diagnoses, mTBI; "[l]eft-sided

---

[5]The plaintiff was in combat in Iraq in 2008-09, during which he did "front line support with the combat trucks in the line of fire" (Tr. 42).

headaches—migranious in nature, actually worsened in frequency and duration" (Tr. 1464).

Moreover, on March 13, 2019, the plaintiff underwent an "Evaluation of Residuals of Traumatic Brain Injury" in connection with a Compensation and Pension Examination (Tr. 1633–48).   Dr. Linda J. Lancaster recounted that the plaintiff had diagnoses of TBI and residual headaches attributable to TBI (Tr. 1634, 1640).   Dr. Gayani K. Leonard affirmed that the plaintiff's headaches and alleged memory loss were "totally attributable to the [patient's] TBI" (Tr. 1593).

The plaintiff described his headaches as pulsating or throbbing head pain, accompanied by sensitivity to light and sound, and that they typically last less than one day (Tr. 1646).   Dr. Lancaster opined that the plaintiff's headaches affected his ability to work (see Tr. 1642, 1648), stating that, "[w]hen he has a headache, he has to stop work until it passes" (Tr. 1648).

In sum, at least three doctors diagnosed the plaintiff with mild TBI, and two doctors attributed the plaintiff's alleged headaches to TBI. Although the record contained these medical reports, and plaintiff's

representative raised the issue of the plaintiff's TBI diagnosis and headaches at the administrative hearing (Tr. 57– 59), the law judge did not mention TBI or headaches in his decision, and he certainly did not evaluate whether they cause any functional limitations.   Consequently, it is unclear whether the law judge rejected this evidence, or overlooked it.   Furthermore, if the law judge discounted that evidence, he needed to give an explanation for his determination.   See Luckey v. Astrue, 331 Fed. Appx. 634, 639 (11th Cir. 2009).   Therefore, the law judge's failure to address this evidence constitutes reversible error.

The Commissioner, in his response, does not assert that the law judge considered TBI or headaches.   In fact, the Commissioner does not mention headaches, either.

Rather, he contends that the failure to assess the plaintiff's TBI is harmless error because any alleged resulting limitations are encompassed by the law judge's evaluation of the plaintiff's mental impairments (see Doc. 24, pp. 6–7).   This argument fails.

Thus, the Commissioner argues that the law judge evaluated the plaintiff's mental functioning by assessing the four broad functional areas

for evaluating mental disorders, and that the evidence of only mild limitations in those areas "support[s] the ALJ's determination that Plaintiff's mental condition would have no more than a minimal limitation [on] his ability to perform basic mental work activities during the relevant period" (Doc. 24, pp. 5–6).   The Commissioner elaborates (id., pp. 6–7):

> While Plaintiff suggests some of his symptoms could be attributable to diagnoses of PTSD or traumatic brain injury ... he has not come forward with evidence to show that he had greater limitations than found by the ALJ.  As a result, substantial evidence supports the ALJ's ratings and his determination that Plaintiff's medically determinable mental impairments were not severe (Tr. 14–15).

See Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (A diagnosis is insufficient; the claimant must show the effect of the impairment on his ability to work.).

The Commissioner's response misses the point.   Seemingly, the TBI and headaches are physical impairments and thus could not be evaluated properly under the four functional areas for evaluating mental impairments.   In any event, under Gibson v. Heckler, supra, 779 F.2d at 623, the law judge was required to evaluate the diagnoses of TBI and residual

headaches, determine whether the conditions are medically determinable impairments and, if so, the severity of those impairments.   He certainly did not do that.

Furthermore, contrary to the Commissioner's argument, it cannot be concluded at this point that the failure to evaluate these other impairments is harmless error.   Thus, the plaintiff alleged that he suffered from headaches, which were "migranious in nature" (Tr. 1464), and Dr. Lancaster opined that the headaches affected his ability to work (Tr. 1642, 1648).   This evidence, which apparently was not considered by the law judge, could result in a more restrictive mental and/or physical residual functional capacity.   Accordingly, this issue warrants remand for further consideration.

Finally, as indicated, the plaintiff raises other challenges to the law judge's decision.   In view of the remand, it is unnecessary to address those contentions, since following the remand a new decision will be issued and the specific challenges may be rendered moot.

For the foregoing reasons, I recommend that this decision be reversed, and the matter remanded for further proceedings.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED:   MAY 7 , 2021

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions or to seek an extension of the fourteen-day deadline.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

-13-